IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **STATE FARM FIRE & CASUALTY CO.,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| v. | : | No.: 22-cv-3516 |
| | : | |
| **COWAY USA, INC.,** | : | |
| **Defendant.** | : | |

**MEMORANDUM**

**SITARSKI, M.J.**                                                                                          **October 23, 2024**

This subrogation matter arises from damages sustained at the home of Mikyung and Adrian Kim ("the Kims") at 1 Haymarket Lane in Bryn Mawr, Pennsylvania after a component part to a bidet attached to the Kim's upstairs toilet failed, causing massive flooding throughout the home (the "flood event"). State Farm Fire & Casualty Co. ("Plaintiff" or "State Farm") commenced this action as a subrogee against Coway USA, Inc ("Defendant" or "Coway"), to recover payments made to the Kims for property damage and additional expenses they claimed pursuant to their homeowner's policy. (Compl. at ¶¶ 18-19, ECF No. 1). State Farm alleged that Coway sold the defective bidet to Mikyung Kim, that the bidet malfunctioned, and that the ensuing damage to the Kims' home was caused by the failure of the component part—a "T-connector" which regulates the flow of water to and through the subject bidet. Plaintiff originally sought recovery on theories of negligence, strict liability, breach of warranties, and breach of contract. (*See generally* Compl., ECF No.1). On October 19, 2022, this Court granted Defendant's Motion to Dismiss Plaintiff's negligence claim, leaving only Plaintiff's claims of strict liability, breach of warranties, and breach of contract. (Order of Oct. 19, 2022, ECF No. 10).

Presently pending before the Court[1] are: (1) Defendant's motion for summary judgment (Renewed Mot. Summ. J. of Def. Coway USA, Inc., ECF No. 52) (hereinafter "Def.'s Mot. Summ. J."), as well as Plaintiff's response thereto (Pl.'s Resp. in Opp'n to Def.'s Renewed Mot. Summ. J., ECF No. 55) (hereinafter "Pl.'s Resp."), and; (2) Defendant's motion to exclude certain expert testimony (Renewed *Daubert* Mot. of Def. Coway USA, Inc. to Preclude Opinions of Pl.'s Expert Craig Clauser at Trial, ECF No. 53), as well as Plaintiff's response thereto (Pl.'s Resp. in Opposition to Def.'s Renewed Mot. to Exclude Craig Clauser, ECF No. 54). For the reasons that follow, Defendant's motion for summary judgment shall be **GRANTED**.[2]

I.   **FACTS AND PROCEDURAL BACKGROUND**[3]

This action arises out of the flood event at the Kims' home in April 2021. Mikyung Kim and her husband Adrian Kim have owned the subject property since at least 2010. (Deposition of Mikyung Kim, August 18, 2023, at 20-21, attached as Ex. C to Def.'s Mot. Summ J., ECF No. 52). In 2010, Mikyung Kim contracted with a man she believed was a Coway representative to install a water purification system in the Kims' home. (*Id.*, ECF No. 52). Around the same time, Kim's father asked to have a bidet system installed in the Kims' upstairs bathroom, after which Kim also spoke with the same man about bidet options. (*Id.* at 21, ECF No. 52). Thereafter, the

---

[1] The parties to this action consented to the referral of this case to a magistrate judge of this Court. (Consent and Reference of a Civil Action to Magistrate Judge, ECF No. 27; 28 U.S.C. § 636(c); Fed. R. Civ. P. 73).

[2] Because this Court grants Defendant's Motion for Summary Judgment, Defendant's motion to exclude Craig Clauser's expert testimony is moot.

[3] As required at this stage of the proceeding, the Court views the evidence in the light most favorable to Plaintiff as the non-moving party. *See, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

same man came out to install a BA07-R/E model bidet system in the Kims' upstairs bathroom. (*Id.* at 21-23, 31, ECF No. 52).

Mikyung Kim testified at a deposition that the man she contracted with to install both the water purification system and the bidet was a Coway employee. (*Id.* at 20-21, ECF No. 52). Kim believed the man was a Coway employee because the man kept an office—supposedly a Coway office—at a local food market in Philadelphia. (*Id.* at 50, ECF No. 52). According to Kim, the man represented that he was a Coway employee, and "everybody" knew that his store was a Coway store. (*Id.* at 51, ECF No. 52). Kim could not recall the employee's name, however. (*Id.* at 21, ECF No. 52). Kim also confirmed that the store at the local market was no longer in existence. (*Id.* at 50-51, ECF No. 52). Moreover, Kim testified that the man never wore a Coway uniform, nor did he drive a Coway vehicle when he came to install the water purification system and bidet at the Kim's residence. (*Id.* at 49-50, ECF No. 52). Coway never performed any maintenance on the subject bidet. (*Id.* at 39, ECF No. 52). However, according to Kim, the man did have "all the Coway paper with him" when he came to perform the two installations at the Kims' residence. (*Id.* at 50, ECF No. 52). Kim also testified that she had "heard" that Coway had a "headquarters" in New Jersey, which would distribute certain products to the man's Philadelphia store. (*Id.* at 22, ECF No. 52). When pressed, however, Kim admitted that she had no personal knowledge of the headquarters in New Jersey, nor of the relationship—if any—between the New Jersey headquarters and the Philadelphia store. (*Id.* at 22-23, ECF No. 52).

In April of 2021, the Kims traveled to Korea for several months to visit family. (*Id.* at 37, ECF No. 52; Deposition of Wigianto Liem, June 14, 2023, at 18-23, attached as Ex. E to Def.'s Mot. Summ J., ECF No. 52). The Kims' asked their family friend, Wigianto Liem, to

check on the house while they were gone.  (Deposition of Wigianto Liem, June 14, 2023, at 21, attached as Ex. E to Def.'s Mot. Summ J., ECF No. 52).  According to Liem, who was deposed on June 14, 2023, the Kims asked him to check on their home every so often, "whenever [he had the] time" to do so.  (*Id.* at 21-22, ECF No. 52).  On April 5, 2021, Liem went to the Kims' home and observed flooding throughout the home.  (*Id.* at 25, ECF No. 52).  Liem testified that he had visited the home approximately four to seven days prior to April 5, 2021, and he did not observe anything out of the ordinary.  (*Id.* at 24-25, ECF No. 52).  On April 5, 2021, Liem observed that roughly "60 percent" of the first-floor ceiling had collapsed from the flooding.  (*Id.* at 63, ECF No. 52).  A neighbor of the Kims' who happened to be present contacted the police, after which it was discovered that a hose connected to the upstairs bidet had malfunctioned, causing the flooding throughout the home.  (*Id.* at 31, 39, ECF No. 52; Deposition of William Meyer, July 14, 2023, at 24-26, attached as Ex. F to Def.'s Mot. Summ J., ECF No. 52).

On June 6, 2022, the parties held a joint laboratory examination of the "physical artifacts" from the flood event, including the subject bidet and its component parts, at Micron, Inc. in Wilmington Delaware.  (Deposition of Craig Clauser, October 27, 2023, at 22, attached as Ex. I to Def.'s Mot. Summ J., ECF No. 52; Report of Craig Clauser, September 29, 2023, at 1, attached as Ex. G to Def.'s Mot. Summ J., ECF No. 52).  At that examination, the parties jointly determined that the flood event occurred due to the failure of the bidet's plastic T-connector or "T-fitting." (Deposition of Craig Clauser, October 27, 2023, at 23-24, ECF No. 52).  The T-connector—a plastic valve that regulates the flow of water to and through the bidet—was manufactured in 2009.  (*Id.* at 25, ECF No. 52).

According to both parties' retained experts in this case, the T-connector failed due to "creep fracture"—a process that occurs over time wherein, when placed under "tensile stress,"

4

"the bonding between molecular chains slowly [breaks] down allowing a crack to form." (Report of Craig Clauser, September 29, 2023, at 2, ECF No. 52; *see also* Report of Craig Clauser, October 10, 2023, at 1, attached as Ex. H to Def.'s Mot. Summ. J., ECF No. 52). Craig Clauser—State Farm's retained expert—opined that "[t]he part failed in axial tension. The tensile stress which caused this creep failure was the result of the torque with which the male threads of the plastic valve were screwed into the female threads in the metal fitting." (Report of Craig Clauser, September 29, 2023, at 2, ECF No. 52). Clauser further noted that the T-connector "comes fully assembled with the bidet[, and] [t]he installer or owner of the product would not alter this connection in the normal use of the product." (*Id.* at 2, ECF No. 52). Therefore, according to Clauser, "the subject T-shaped connector was in a defective condition when it left the hands of [the manufacturer and distributor, and] the torquing of the valve during assembly had already created the excess tensile stress in the part that caused the creep failure." (*Id.*, ECF No. 52).

Both parties agree that neither the T-connector, nor the bidet itself, were manufactured or designed by Coway, but that Coway did engage in the marketing and distribution of the *model* of the bidet at issue. (Def. Coway USA, Inc.'s Statement Undisp. Facts at ¶¶ 3, 6, attached to Def.'s Mot. Summ. J., ECF No. 52). The parties disagree, however, as to whether Coway marketed and sold *the specific bidet at issue in this case* to the Kims. (*Compare id.* at ¶¶ 3-8, ECF No. 52 *with* Pl.'s Resp. in Opp'n to Def.'s Proposed Stipulation Undisp. Facts at ¶¶ 3-8, ECF No. 56; *see also* Def. Coway USA, Inc.'s Am. Supp. Resps. and Objs. to Pl.'s Interrogs. (Set I) at ¶ 2, attached as Ex. D to Def.'s Mot. Summ. J., ECF No. 52 ("Coway USA did not design, manufacture, or assemble the subject product. Upon an extensive review of its business records, Coway USA possesses no record of distributing or selling the subject product. Coway

5

USA possesses no contract pertaining to the sale, installation, or maintenance of the subject product.  Coway USA was not the exclusive distributor of the BA07-R/E model bidet in the subject 2009-2010 timeframe.  Plaintiff's Insured, Mikyung Kim, stated in her discovery deposition that the subject bidet was purchased from a Coway store in Philadelphia.  Coway USA did not own or operate any store or office in Philadelphia, Pennsylvania during the subject 2009-2010 timeframe." (citations omitted))).[4]

After paying the Kims' homeowner's insurance claim related to the flooding event, State Farm filed the instant action against Coway, advancing theories of products liability, breach of warranties, and breach of contract.[5]  (Compl. at ¶¶ 3-4, 25-47, ECF No. 1).  Coway in turn denies that it sold the subject bidet to the Kims.  (Def.'s Mot. Summ. J. at 8-10, ECF No. 52).  Coway filed its motion for summary judgment on March 1, 2024, arguing, amongst other things, that State Farm cannot point to sufficient evidence in the record that Coway was in fact the seller of the subject bidet, and therefore cannot succeed on any of its claims related to the malfunction of

---

[4] Plaintiff State Farm takes issue with Coway's supplemental discovery response on this point, arguing that "Coway had admitted that it was the distributor of the subject product," and that "well after the [discovery] deadline to do so, produced amended discovery (without leave of court) verifying that there is no evidence that it distributed the subject product." (*See* Pl.'s Resp. in Opp'n to Def.'s Proposed Stipulation Undisp. Facts at ¶ 3, ECF No. 56).  According to State Farm, this denial comes too late, and is therefore barred by this Court's orders pertaining to timely discovery.  (*See* Pl.'s Resp. at 10, ECF No. 55 ("[T]hroughout the fact- and expert-discovery phases of this case, Defendant admitted that it advertised and sold the subject product, though it now claims it was not so involved.")).  To the extent that State Farm raises an objection to Coway's subsequent denial of sale of the subject bidet based on timeliness, this Court notes that Fed. R. Civ. P. 26(e) imposes on each party a continuing duty to supplement its discovery responses "if the party learns that in some material respect the disclosure or response is incomplete or incorrect."  To this end, Coway rightly supplemented its discovery response after it reviewed its business records and determined that although it did distribute the model bidet, it possessed no record of sale of the specific bidet at issue to the Kims.

[5] As noted *supra*, Plaintiff also pleaded a claim of negligence, which was subsequently dismissed by order of this Court.

the subject bidet.  (*Id.*, ECF No. 52).  This Court agrees.

## II. LEGAL STANDARD

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if it "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue is "genuine" if there is sufficient evidence from which a reasonable jury could find in favor of the non-moving party.  *Id.*  It is not the Court's role to weigh the disputed evidence and decide which is more probative or to make credibility determinations.  Rather, the Court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party.  *See, e.g.*, *Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.,* 475 U.S. 574, 587-88 (1986); *Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358, 361 (3d Cir. 1987).  If a conflict arises between the evidence presented by both sides, the Court must accept as true the evidence adduced by the non-moving party, and "all justifiable inferences are to be drawn in his favor."  *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress Co.*, 398 U.S. 144, 158-59 (1970)).

The moving party bears the initial burden of demonstrating that there is no genuine issue of material fact.  *See, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986).  Once the moving party carries this initial burden, the non-moving party must come forward with specific facts showing there is a genuine issue for trial.  *See, e.g., Anderson*, 477 U.S. at 256-57; *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.  The non-moving party thereby must present something more than mere allegations, general denials, vague statements, or suspicions in order to defeat a properly supported motion for summary judgment.  *See, e.g., Trap Rock Indus., Inc. v.*

*Local 825, Int'l Union of Operating Eng'rs*, 982 F.2d 884, 890 (3d Cir. 1992); *Fireman's Ins. Co. of Newark v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citing *Dombrowski v. Eastland*, 387 U.S. 82 (1967) (per curiam); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)).

### III.  DISCUSSION

Each claim advanced by Plaintiff requires first that Plaintiff prove that Coway was indeed the seller, marketer, or distributor of the specific bidet at issue in this case. *See Tincher v. Omega Flex, Inc.*, 104 A.3d 328, 387 (Pa. 2014) ("The duty [imposed] in strict [products] liability [cases] pertains to the duty of a manufacturer and of suppliers in the chain of distribution to the ultimate consumer."); *Hahn v. Atlantic Richfield Co.*, 625 F.2d 1095, 1099 (3d Cir. 1980) ("Proof of sale from [the defendant] . . . was an essential fact necessary to support the [plaintiff's breach of warranty claim.]"); *Kassab v. Central Soya*, 246 A.2d 848, 853-56 (Pa. 1968) (remote supplier of defective product may be sued for breach of warranty) *overruled in part on other grounds*; *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003) ("Pennsylvania law requires that a plaintiff seeking to proceed with a breach of contract action must establish '. . . the existence of a contract, including its essential terms.'" (quoting *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct.1999))). In other words, absent proof that Coway sold the subject bidet—either to the Kims, or to another merchant in the chain of distribution—Coway cannot be held liable for any defective component of the subject bidet. This is a threshold issue. Because State Farm cannot point to evidence in the record to sufficiently support an inference that Coway either (1) sold the subject bidet to the Kims; or (2) was a link in

the chain of distribution of the subject bidet, summary judgment is appropriate.

Coway argues (and this Court agrees), that no admissible evidence exists to affirmatively link Coway to the sale of the subject bidet. (Def.'s Mot. Summ. J. at 8-10, ECF No. 52). Coway admits that during the relevant timeframe, it functioned as one of multiple distributors of the BA07-R/E model bidet. (*Id.* at 9, ECF No. 52). This fact, standing alone, cannot withstand a motion for summary judgment, given that it is just as likely that another company sold or distributed the specific bidet that ended up in the Kims' home. *See Hahn*, 625 F.2d at 1099 ("It is possible that the [subject product] may have been obtained by lease, or by bailment. . . . The [subject product] may have been purchased as part of a bulk transfer. It may have been found by, or even given to [the plaintiff's employer]. Or, as the jury inferred, it may have been purchased by [the plaintiffs' employer] from [the defendant]. Although all of these are conceivable possibilities, none of them can be properly inferred from the evidence presented at trial. There is simply no evidence, either direct or circumstantial, that would indicate how [the plaintiff's employer] came to possess the [subject product]."). Where a verdict in Plaintiff's favor "would require the jury to use 'conjecture, surmise, guess or speculation,'" summary judgment is appropriate. *Kornfeind v. New Werner Holding Co., Inc.*, 241 A.3d 1212, 1218 (Pa. 2020) (quoting *Krauss v. Trane U.S. Inc.*, 104 A.3d 556, 568 (Pa. Super. Ct. 2014)).

State Farm points to several additional pieces of "evidence" in the record to argue that it has raised a "[f]actual [i]ssue as to [d]istribution" of the subject bidet. (Pl.'s Resp. at 10, ECF No. 55). The purported evidence in the record includes:

> (1) the fact that at first, Coway admitted to distributing the subject bidet, and only later supplemented its discovery responses to deny selling the specific subject product, admitting only that it distributed the BA07-R/E model bidet system;

9

(2) Kim asserted in her deposition that she purchased the bidet system from a Coway employee who operated a Coway store in Philadelphia;

(3) the purported employee received his Coway products from Coway's New Jersey "headquarters"; and

(4) Coway was the *only* distributor of the BA07-R/E model bidet system.

(*Id.* at 10-11, ECF No. 55).

This Court does not view Coway's supplemental discovery responses as anything out of the ordinary. Coway asserts that the initial admission was a clerical error, and that Coway meant only to admit that it functioned as a distributor of the *BA07-R/E model bidet system*, not the *specific* bidet installed in the Kims' home at issue here. (*See* Def. Coway USA, Inc.'s Am. Supp. Resps. and Objs. to Pl.'s Interrogs. (Set I) at ¶ 2, ECF No. 52; *see also* Deposition of Jongig Min, January 24, 2024, at 69, attached as Ex. J to Def.'s Mot. Summ. J., ECF No. 52 (Coway's corporate representative confirming that Coway's discovery response regarding the sale of the subject bidet should have stated that Coway "distributed and advertised the subject *model* product" (emphasis added))). Coway supports this inadvertent error by pointing to the absence of any business records—either in its possession or in the possession of the Kims—showing a contract for sale of the subject product to the Kims. (*See* Def.'s Mot. Summ. J. at 8-10, ECF No. 52; *see also* Pl.'s Resp. in Opp'n to Def.'s Proposed Stipulation Undisp. Facts at ¶ 8, ECF No. 56 (confirming that the Kims do not possess any documentation of the purchase of the subject bidet, as it was purportedly destroyed by the flooding event)).

Moreover, to the extent that Mikyung Kim testified in her deposition that she purchased the subject bidet from a Coway employee, Coway asserts that after review of its business records, it "did not operate a Philadelphia store or office in the 2009-2010 timeframe." (Def.

Coway USA, Inc.'s Statement Undisp. Facts at ¶ 7, ECF No. 52). As noted above, Kim cannot recall the name of the purported Coway employee, he never wore a Coway uniform or drove a Coway truck, and the purported Coway store is no longer in existence. In other words, Plaintiff's case rises and falls on Kim's unsubstantiated testimony regarding her purchase of the subject bidet over ten years ago.

In *Kornfeind*, the plaintiff alleged injuries stemming from a defective ladder. 241 A.3d at 1215. The plaintiff claimed he purchased the ladder from Home Depot because he made all such purchases at Home Depot, though he had no other evidence to corroborate his belief. *Id.* at 1218. The court there noted that "[s]pecifically, Kornfeind did not have a sales receipt, a memory of an associated purchase, or any other corroborating fact." *Id.* Ultimately, the court found that, even viewing the plaintiff's testimony in the best light, it was insufficient. *Id.* The same is true here, as State Farm offers no documentation to support Kim's claim that she purchased the subject bidet from Coway, and there are no facts or admissible evidence[6] to corroborate Kim's testimony on this point.

Next, to the extent that Plaintiff contends Coway had a distribution center in New Jersey, and that that headquarters functioned as a supplier to the purported Philadelphia store, there is no evidence linking the two. Jongig Min—Coway's corporate representative—testified that the company may have had a distribution on the East Coast "somewhere around [the] New Jersey area." (Deposition if Jongig Min, January 24, 2024, at 53, attached as Ex. H to Pl.'s Resp., ECF No. 55). However, Coway confirmed that it did not maintain a Philadelphia store during that

---

[6] As Coway notes, evidence that is inadmissible at trial may not be relied upon to defend against a motion for summary judgment. *See Shelton v. University of Medicine & Dentistry of New Jersey*, 223 F.3d 220, 223 n.2 (3d Cir. 2000). Here, the man's representation that he worked for Coway is inadmissible hearsay which does not fall under any of the hearsay exceptions or exclusions. *See* Fed. R. Evid. 802; Fed. R. Evid. 803; Fed. R. Evid. 804.

11

time (Def. Coway USA, Inc.'s Am. Supp. Resps. and Objs. to Pl.'s Interrogs. (Set I) at ¶ 2, ECF No. 52), and the only connection that Plaintiff conjures is Kim's own deposition testimony that the store that the man operated was a Coway store and that she believed that Coway's New Jersey headquarters supplied the man with the products he sold out of his store (Deposition of Mikyung Kim, August 18, 2023, at 22-23, ECF No. 52).  However, when pressed on the point, Kim admitted that she had no personal knowledge of either the New Jersey headquarters, or its relationship to the store she purchased her bidet from.  (*Id.*, ECF No. 52).  This is insufficient to withstand Coway's motion for summary judgment.

In an attempt to bolster its contention on this point, State Farm argues that Coway was the *only* distributor of the BA07-R/E model bidet system at the relevant time period.  (Pl.'s Resp. in Opp'n to Def.'s Proposed Stipulation Undisp. Facts at ¶ 6, ECF No. 56) (noting that "[t]here is no evidence of any other distributor of the [BA07-R/E model] bidet during the 2009-2010 timeframe").  However, State Farm does not support this contention with any evidence in the record.  Instead, State Farm argues only that the absence of proof of another distributor is sufficient to give rise to the requisite inference that Coway must have sold the subject bidet to the Kims.  (*Id.*, ECF No. 56).  In response, Coway contends (also without any evidentiary support) that it was *not* the only distributor of the BA07-R/E model bidet system.  (Def. Coway USA, Inc.'s Statement Undisp. Facts at ¶ 6, ECF No. 52).  Though this Court is sympathetic to the difficulties of proving a negative, in the instant case, when faced with the affirmative representations from Coway (based on searches of its business records) that (1) it did not maintain a Philadelphia store, (2) nor did it ever sell the referenced product to the Kims, State

12

Farm's arguments on this point fail.[7]

Because State Farm cannot point to sufficient evidence which would give rise to a reasonable inference that Coway sold the subject bidet, State Farm's claims fail, as a matter of law. *Kornfeind*, 241 A.3d at 1218.

IV. **CONCLUSION**

For the foregoing reasons, Defendant's Motion for Summary Judgment is granted.

BY THE COURT:

  /s/ Lynne A. Sitarski
LYNNE A. SITARSKI
United States Magistrate Judge

---

[7] On a motion for summary judgment, the initial burden rests with the movant to demonstrate that there is no genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 322-24. Once the moving party carries this initial burden, the non-moving party must come forward with specific facts showing there is a genuine issue for trial. *Anderson*, 477 U.S. at 256-57. The non-moving party thereby must present something more than mere allegations, general denials, vague statements, or suspicions in order to defeat a properly supported motion for summary judgment. *Trap Rock Indus.*, 982 F.2d at 890. Here, Coway has shown, through its discovery responses, relevant deposition testimony, and its business record searches that no genuine issue exists as to whether it sold the subject bidet. Absent an affirmative showing by Plaintiff that Coway's discovery responses are in any way deficient or made in bad faith, this Court will not presume as much. *See Boldman v. Walmart Stores, Inc.*, 754 Fed. App'x 148, 150 (3d Cir. 2018) (rejecting a plaintiff's contention that the defendant company's business records were "fallible and inadequate" absent any evidence to support such a claim).